This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36252**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**THOMAS L. MARTINEZ,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CIBOLA COUNTY**
**Pedro G. Rael, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**IVES, Judge.**

**{1}** A jury convicted Thomas Martinez (Defendant) of aggravated driving while intoxicated (DWI) with refusal to submit to chemical testing contrary to NMSA 1978, Section 66-8-102(D)(3) (2010, amended 2016),[1] careless driving contrary to NMSA 1978, Section 66-8-114 (1978), and possession of an open container contrary to NMSA

---

1The statute was amended in 2016, but the relevant portion (Subsection (D)(3)) did not change.

1978, Section 66-8-138 (2013). On appeal, Defendant argues that (1) there was insufficient evidence to sustain a conviction for careless driving; (2) the convictions for aggravated DWI and careless driving violate double jeopardy; and (3) omission of an essential element from the open container jury instruction constitutes fundamental error.[2] We affirm Defendant's convictions for aggravated DWI and careless driving, but reverse his open container conviction because we agree with Defendant and the State that the given jury instructions on that charge gave rise to fundamental error.

**BACKGROUND**

**{2}** On March 24, 2015, Sergeant Michael Oelcher of the Cibola County Sheriff's Department was driving eastbound on State Road 124 while on duty. Defendant approached Oelcher from the opposite direction and swerved into Oelcher's lane, causing Oelcher to veer "about a third off the roadway." After turning his car around, Oelcher found and made contact with Defendant in a parking lot across from a convenience store. Oelcher observed that Defendant stumbled while walking; smelled of alcohol; had bloodshot, watery eyes; and was slurring his words. When asked by Oelcher, Defendant stated that his truck had "probably" shut off because of his interlock device and that he had consumed "enough" alcohol.

**{3}** After Defendant was unable to perform two administered standardized field sobriety tests, Oelcher arrested Defendant and conducted a "tow inventory" of Defendant's vehicle. The inventory yielded "a bottle of Kirkland vodka" with a broken seal and some of its contents removed. Defendant was informed of the Implied Consent Act, and Defendant refused to submit to chemical testing.

**{4}** After a jury trial, Defendant was convicted of aggravated DWI, careless driving, and possession of an open container. Defendant appeals.

**DISCUSSION**

**I. Sufficient Evidence Supports the Conviction for Careless Driving**

**{5}** Defendant argues on appeal that there was insufficient evidence to support his conviction for careless driving under Section 66-8-114. Defendant argues that his conviction was "based solely upon his act of briefly swerving once into another lane, leading Officer Oelcher to react by driving part way off the road" and that this is insufficient to demonstrate that Defendant drove in a careless or imprudent manner. We disagree.

**{6}** When reviewing the sufficiency of the evidence, we "scrutin[ize] . . . the evidence and supervis[e] . . . the jury's fact-finding function to ensure that . . . a rational jury could have found beyond a reasonable doubt the essential facts required for a conviction."

---

[2]On appeal, Defendant also argues that the district court's failure to give a general intent instruction for the open container conviction was reversible error. Because we reverse the open container conviction for fundamental error in a different jury instruction, we do not reach this issue.

*State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (emphasis, internal quotation marks, and citation omitted). We "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (internal quotation marks and citation omitted). "In that light, the [appellate c]ourt determines whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* ¶ 20 (internal quotation marks and citation omitted). The reviewing "court does not weigh the evidence and may not substitute its judgment for that of the [jury] so long as there is sufficient evidence to support the verdict." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. "The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *Holt*, 2016-NMSC-011, ¶ 20 (alteration, internal quotation marks, and citation omitted).

**{7}** In order to convict Defendant of careless driving, the State had to prove that "[D]efendant operated [a] motor vehicle in a careless, inattentive or imprudent manner without due regard for the width, grade, curves, corners, traffic, weather, road conditions[,] and all other attendant circumstances[.]" "[T]he careless-driving statute requires only a showing of ordinary or civil negligence." *State v. Yarborough*, 1996-NMSC-068, ¶ 21, 122 N.M. 596, 930 P.2d 131.

**{8}** Based on the evidence the State presented at trial, a rational juror could conclude that Defendant drove carelessly in violation of Section 66-8-114. Oelcher testified that he had "observed . . . [a] full size Ford pickup . . . approaching [him] in the opposite direction" and that "[t]he vehicle [had] swerved in [his] lane causing [him] to go . . . about a third off the roadway." Oelcher added that the incident occurred on a section of highway that only has "one lane in each direction, east and west." Oelcher located the vehicle, and determined Defendant was the driver of the vehicle. A rational juror could infer from this testimony that Defendant was careless and inattentive behind the wheel. Viewed in the light most favorable to the verdict, the evidence is sufficient to support Defendant's careless driving conviction.

## II. Double Jeopardy Does Not Bar Defendant's Convictions for Aggravated DWI and Careless Driving

**{9}** Defendant argues that "[t]he unsafe driving that is the basis of the careless driving conviction is statutorily built into [Defendant's] conviction for [a]ggravated DUI." Specifically, Defendant contends that his intoxication "prevented him from operating his vehicle in a safe, non-careless manner[,]" and that, therefore, "[t]he crimes charged were coterminous." Defendant's argument presents a question of constitutional law, which we review de novo. *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747.

**{10}** The Fifth Amendment of the United States Constitution protects against successive prosecutions for the same offense and against multiple punishments for the same offense. *Swafford v. State*, 1991-NMSC-043, ¶ 6, 112 N.M. 3, 810 P.2d 1223. There are two types of multiple punishment cases: (1) unit-of-prosecution cases, where

an individual is convicted of multiple violations of a single criminal statute; and (2) double-description cases, in which an individual is convicted under multiple statutes for a single act or transaction. *Id.* ¶¶ 8-9. Aggravated DWI and careless driving are separate crimes, and Defendant's double jeopardy challenge therefore raises double-description concerns. "In analyzing double-description challenges, we employ the two-part test, set out in *Swafford* . . . , in which we examine (1) whether the conduct is unitary, and, if so, (2) whether the Legislature intended to punish the offenses separately." *State v. Gonzales*, 2019-NMCA-036, ¶ 14, 444 P.3d 1064 (citing *Swafford*, 1991-NMSC-043, ¶ 25). "If the conduct is not unitary, then there is no double jeopardy violation." *State v. Torres*, 2018-NMSC-013, ¶ 18, 413 P.3d 467.

**{11}**　　Resolution of the unitary conduct issue "depends to a large degree on the elements of the charged offenses and the facts presented at trial." *State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104 (internal quotation marks and citation omitted). "The proper analytical framework is whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *Id.* (internal quotation marks and citation omitted). We must determine whether the acts forming the basis for each offense are "separated by sufficient indicia of distinctness," *State v. DeGraff*, 2006-NMSC-011, ¶ 27, 139 N.M. 211, 131 P.3d 61 (internal quotation marks and citation omitted), "consider[ing] such factors as whether [the] acts were close in time and space, their similarity, the sequence in which they occurred, whether other events intervened, and the defendant's goals for and mental state during each act[,]" *Franco*, 2005-NMSC-013, ¶ 7.

**{12}**　　To convict Defendant of aggravated DWI based upon a refusal to submit to chemical testing under the jury instruction given, the State was required to prove that:

　　　1.　[D]efendant operated a motor vehicle;

　　　2.　At that time [D]efendant was under the influence of intoxicating liquor; that is, as a result of drinking liquor [D]efendant was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public;

　　　3.　[D]efendant refused to submit to chemical testing;

　　　4.　This happened in New Mexico, on or about the 24th day of March[,] 2015.

*See* § 66-8-102(D)(3); UJI 14-4508 NMRA. To obtain a conviction for careless driving under the given instruction, on the other hand, the State had to prove that:

　　　1.　[D]efendant operated a motor vehicle on a highway;

2.  [D]efendant operated the motor vehicle in a careless, inattentive or imprudent manner without due regard for the width, grade, curves, corners, traffic, weather, road conditions and all other attendant circumstances; or [D]efendant failed to give his full time and entire attention to the operation of the vehicle;[3]

3.  This happened in New Mexico, on or about the 24th day of March, 2015.

*See* § 66-8-114.

**{13}**    The evidence presented to prove these elements at trial demonstrates that Defendant's convictions for each crime were premised on independent factual bases. At trial, the State produced evidence of aggravated DWI including Oelcher's testimony that Defendant stumbled while walking towards him; smelled of alcohol; had bloodshot, watery eyes; and was slurring his words. Defendant was also unable to perform field sobriety tests and refused to submit to chemical testing. Oelcher also testified that Defendant admitted he had consumed alcohol. The State's evidence of careless driving was limited to Oelcher's testimony that Defendant swerved into his lane, which caused Oelcher to go off the road. Based on this evidence, the jury reasonably could have inferred independent factual bases for the aggravated DWI charge and the careless driving charge. As a result, we conclude that Defendant's conduct was not unitary, even though the evidence of careless driving buttressed the evidence that Defendant was driving under the influence of alcohol. *Cf. State v. Sisneros*, 1938-NMSC-049, ¶ 19, 42 N.M. 500, 82 P.2d 274 (noting, in a case involving reckless driving and driving under the influence, "[a] conviction of one would not be a bar to a prosecution for committing the other offense[,]" and that "[w]hile the evidence of intoxication might bear upon the question of whether the defendant was guilty of reckless driving, it does not necessarily prove it; but is a circumstance to be considered by the jury in deciding the issue"). We therefore have no need to consider "whether the [L]egislature intended to create separately punishable offenses." *Swafford*, 1991-NMSC-043, ¶ 25. Defendant's convictions for aggravated DWI and careless driving do not violate his right to be free from double jeopardy.

### III.    The Jury Instructions for Possession of an Open Container Gave Rise to Fundamental Error

---

3In the hope of preventing use of the given instruction in future cases, we note that it diverged from the uniform instruction for careless driving, UJI 14-4505 NMRA, by permitting the jury to convict Defendant on the alternative ground that he "failed to give his full time and entire attention to the operation of the vehicle[.]" Although Subsection (A) of the careless driving statute, § 66-8-114, does provide that "[a]ny person operating a vehicle on the highway shall give his full time and entire attention to the operation of the vehicle[,]" we have previously "decline[d] to read [that subsection] as proscribing [a] different kind[] of conduct[,]" *State v. Brennan*, 1998-NMCA-176, ¶ 6, 126 N.M. 389, 970 P.2d 161, than that proscribed by Subsection (B), which prohibits "operat[ing] a vehicle in a careless, inattentive or imprudent manner, without due regard for the . . . attendant circumstances."

**{14}** Defendant argues and the State concedes that *State v. Nevarez*, 2010-NMCA-049, 148 N.M. 820, 242 P.3d 387, requires us to reverse Defendant's conviction for possession of an open container. While we are not bound by the State's concession, *State v. Tapia*, 2015-NMCA-048, ¶ 31, 347 P.3d 738, we accept that concession as supported by controlling precedent.

**{15}** "The propriety of the jury instructions given by the district court is a mixed question of law and fact requiring de novo review." *State v. Candelaria*, 2019-NMSC-004, ¶ 31, 434 P.3d 297. When, as in this case, a defendant fails to object to a jury instruction, we review for fundamental error. *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (stating that if an error is unpreserved "we review for fundamental error"). We first "seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *Id.* (internal quotation marks and citation omitted). "[J]uror confusion or misdirection may stem not only from instructions that are facially contradictory or ambiguous, but from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *Id.* "If we find error, our obligation is to review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the [d]efendant's conviction was the result of a plain miscarriage of justice." *State v. Barber*, 2004-NMSC-019, ¶ 19, 135 N.M. 621, 92 P.3d 633 (internal quotation marks and citation omitted). "[W]e [will] not uphold a conviction if an error implicate[s] a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *Id.* ¶ 18 (internal quotation marks and citation omitted).

**{16}** We begin by asking whether the district court's jury instructions would have confused or misled a reasonable juror. In relevant part, the open container statute provides:

> No person shall knowingly have in the person's possession *on the person's body*, while in a motor vehicle upon any public highway within this state, any bottle, can or other receptacle containing any alcoholic beverage that has been opened or had its seal broken or the contents of which have been partially removed.

Section 66-8-138(B) (emphasis added). In *Nevarez*, we discussed the meaning of this statute in the context of the defendant's challenge to given jury instructions. In that case, the district court had instructed the jury that it could find the defendant guilty of possession of an open container if the container was "in his immediate possession[,]" but the court had not defined immediate possession. *Nevarez*, 2010-NMCA-049, ¶ 11 (emphasis and internal quotation marks omitted). Challenging his open container conviction on appeal, the defendant argued that the absence of the "on his person" language in the jury instruction for the open container charge was fundamental error. *Id.* ¶ 2 (emphasis and internal quotation marks omitted). We agreed, concluding that "mere constructive possession of an open container" does not violate Section 66-8-138(B). *Nevarez*, 2010-NMCA-049, ¶ 20. However, we noted that this holding should not be understood "to mean that, as a matter of law, a defendant may be convicted only when

observed with an open container in hand or perhaps within an article of clothing." *Id.* ¶ 21. We therefore held "that Section 66-8-138(B) requires more than facts merely showing that an open container was located within a defendant's vehicle, but does not go so far as requiring that a defendant must be observed in actual physical possession of an open container." *Nevarez*, 2010-NMCA-049, ¶ 22. Although we declined in *Nevarez* to decide whether "on his person" is an essential element of the crime, *id.* ¶ 28, we explained that "[j]ury instructions implementing this section must either follow the express language of the statute, or be crafted to better capture [the statute's possession] standard[.]" *Id.* ¶ 22.

**{17}** The district court's instruction in Defendant's case did not follow the express language of the statute or otherwise accurately capture the relevant possession standard. The instruction stated in pertinent part that the jury had to find beyond a reasonable doubt that "[D]efendant knowingly had in his possession any bottle, can or other receptacle containing any alcoholic beverage which had been opened or had its seal broken or had its contents partially removed." Contrary to *Nevarez*, the district court supplemented that instruction with a further instruction on constructive possession, which—in a plainly "[in]accurate rendition of the relevant law[,]" *Benally*, 2001-NMSC-033, ¶ 12—stated that "[a] person is in possession of an open container when . . . he knows it is on his person *or in his presence* and he exercises control over it." Combined, these instructions would confuse or mislead a reasonable juror, allowing a conviction based on the mistaken belief that proof of constructive possession suffices when, in fact, "mere constructive possession of an open container" does not violate the open container statute. *Nevarez*, 2010-NMCA-049, ¶ 20.

**{18}** Having determined that a reasonable juror would be confused or misdirected by the given instructions, we ask whether the erroneous instructions resulted in a miscarriage of justice. We conclude that the jury instructions caused a fundamental unfairness in Defendant's trial because of the likelihood that Defendant was convicted based on an incorrect legal standard. In *Nevarez*, 2010-NMCA-049, ¶ 30, we held that fundamental error occurred because we could not "conclude with confidence that [the d]efendant's guilt was proven beyond a reasonable doubt pursuant to the requisite legal standard for possession under Section 66-8-138(B)." In Defendant's case, the jury received an instruction *explicitly* allowing a conviction based on a constructive possession standard, even though we held in *Nevarez* that the statute requires the State to prove possession under a significantly higher standard. Accordingly, as in *Nevarez*, "[t]here is a distinct possibility" that the jury convicted Defendant "based on the mere finding that the open container was in [his] vehicle, as opposed to the proper standard requiring possession on [a d]efendant's person." 2010-NMCA-049, ¶ 30. Because fundamental error occurred, we reverse Defendant's open container conviction and remand for further proceedings on that count.

**CONCLUSION**

**{19}** We affirm Defendant's convictions for aggravated DWI and careless driving. We reverse Defendant's conviction for possession of an open container and remand for further proceedings.

**{20}  IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**